NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

TIMOTHY ESTES,
*Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA,
*Respondent*,

CONTRACTED DRIVER SERVICE,
*Respondent Employer*,

COMMERCE & INDUSTRY INS CO C/O
AIG CLAIMS SVC,
*Respondent Carrier*.

No. 1 CA-IC 17-0061
FILED 6-12-2018

Special Action - Industrial Commission
ICA No. 20132-960218
INSCA No. 710-894871
The Honorable Paula R. Eaton, Administrative Law Judge

**AFFIRMED**

COUNSEL

Timothy Estes, Glendale
*Petitioner*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent ICA*

Lundmark, Barberich, LaMont & Slavin, PC, Phoenix
By R. Todd Lundmark, Danielle Vukonich
*Counsel for Respondent Employer/Carrier*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Paul J. McMurdie and Judge David D. Weinzweig joined.

---

**J O H N S E N**, Judge:

**¶1**　　　　Timothy Estes appeals by special action the Decision Upon Review of the Industrial Commission of Arizona ("ICA") denying his petition to reopen an award that found his condition stationary without permanent impairment. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　　Estes was working as a commercial truck driver when he fell from his trailer and was injured on October 8, 2013. He received worker's compensation benefits until May 12, 2014, when the insurer issued a Notice of Claim Status stating he was medically stationary with no permanent impairment. Estes challenged the decision, and, after a hearing, an Administrative Law Judge ("ALJ") found his injury was stationary without permanent impairment as of May 12, 2014. Estes requested review of the decision, the ALJ summarily affirmed, and Estes sought review in this court. We affirmed the award. *Estes v. Indus. Comm'n*, 1 CA-IC 15-0035, 2016 WL 389483, *4, ¶ 17 (Ariz. App. Feb. 2, 2016) (mem. decision).

**¶3**　　　　Estes petitioned to reopen his claim on February 16, 2016, alleging he had "sustained a new, additional, or previously undiscovered disability or condition causally related" to his fall in October 2013. The insurance carrier denied the petition, and Estes requested a hearing. The ALJ heard testimony from Estes, his treating pain-management physician, his treating psychiatric physician assistant, a treating concussion and brain-injury specialist, a neuropsychologist who performed an independent medical examination ("IME"), and another physician who had performed

2

two IMEs of Estes, one in October 2014 before the initial administrative hearing, and another in May 2016.

¶4 Of his physical ailments, Estes testified that he had "severe" headaches, confusion, dizziness, memory loss, vision problems, hearing problems, "severe pain" in his lower back, "pain, numbness and tingling" in his right shoulder and down both arms, "carpal tunnel and ulnar damage" in one elbow, carpal tunnel in his wrist, tingling and numbness throughout both legs, and a hernia in his chest. He also testified his symptoms had worsened since his initial claim closed in May 2014. Estes also testified he suffered from depression, anxiety and post-traumatic stress disorder, and that he had not had any other accidents since his industrial injury in October 2013.

¶5 Estes called three medical professionals to testify. Dr. Patrick Hogan, an anesthesiologist and pain-management expert whose medical group treated Estes, testified that several of Estes's cervical vertebrae were impinging upon his spinal cord. Hogan opined that such an impingement could result in headaches, neck pain and "diminished sensation" in the upper and lower extremities. Tracie Serrato, a psychiatric physician assistant who treated Estes, testified that, based upon the symptoms Estes reported, she had diagnosed him with post-traumatic stress disorder and "major depressive disorder." Dr. Javier Cardenas, director of the Barrow Concussion and Brain Injury Center, testified that after examining Estes beginning in late October 2015 to investigate the prolonged nature of his symptoms, he concluded Estes had "what's called an encephalopathy or generalized brain dysfunction," and recommended psychiatric treatment, balance therapy and speech cognitive therapy.

¶6 Dr. John Walker, a neuropsychologist who conducted an IME of Estes in May and June 2016, testified he observed "not enough symptoms and not specific enough symptoms to meet the criteria for post traumatic stress disorder." Walker also opined that, overall, Estes's neurocognitive function was where it should be but that Estes was "having a very catastrophic reaction psychiatrically to his injury and things that have followed since that time." Dr. Leo Kahn, who performed an IME of Estes for the initial claim and another in connection with the petition to reopen, similarly could not identify any etiology for the symptoms Estes reported.

¶7 The ALJ denied Estes's petition, expressly finding Estes not credible and resolving all conflicts in the evidence against him. The ALJ found Kahn and Walker's opinions "more probably correct and well founded" and concluded that Estes had thus "failed to establish any new,

additional or previously undiscovered condition causally related to his October 8, 2013, industrial injury which necessitates active medical treatment." Estes petitioned for review, and the ALJ summarily affirmed the decision, findings and award.

**¶8** Estes timely sought review in this court, and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2) (2018), 23-951 (2018) and Rule 10 of the Arizona Rules of Procedure for Special Actions.[1]

## DISCUSSION

**¶9** An employee may petition to reopen a claim "upon the basis of a new, additional or previously undiscovered temporary or permanent condition." A.R.S. § 23-1061(H) (2018). The employee must attach to the petition "a copy of a medical report supporting the disability or condition justifying the reopening of the claim." Arizona Administrative Code R20-5-133(B) (2018). In cases of increased subjective pain, the medical report must evidence "a change in objective physical findings." A.R.S. § 23-1061(H).

**¶10** The prerequisite for reopening a claim is "[e]vidence of *change* in physical condition or medical needs." *Stainless Specialty Mfg. Co. v. Indus. Comm'n*, 144 Ariz. 12, 19 (1985) (emphasis in original). "The test for new and additional conditions is purely comparative. The medical evidence must establish that an industrially related condition developed or worsened after the claim was closed." *Perry v. Indus. Comm'n*, 154 Ariz. 226, 229 (App. 1987). The employee also must establish a causal connection between the current condition and the industrial injury. *See Stainless*, 144 Ariz. at 19. "If the causal relationship between the industrial incident and the resulting injury is not apparent, causation must be proved by opinion evidence from a competent medical witness." *Raymer v. Indus. Comm'n*, 18 Ariz. App. 184, 186 (1972).

**¶11** "In reviewing ICA findings and awards, we defer to the ALJ's factual findings but review questions of law de novo." *Landon v. Indus. Comm'n*, 240 Ariz. 21, 24, ¶ 9 (App. 2016). We view the evidence in the light most favorable to upholding the ALJ's award. *Aguayo v. Indus. Comm'n*, 235 Ariz. 413, 414, ¶ 2 (App. 2014). The ALJ is the sole judge of witness credibility. *Henderson-Jones v. Indus. Comm'n*, 233 Ariz. 188, 191, ¶ 9 (App.

---

[1] Absent material revision after the relevant date, we cite the current version of a statute or rule.

2013). When expert medical testimony conflicts, the ALJ must resolve the conflict and, in so doing, may consider many factors, "including whether or not the testimony is speculative, consideration of the diagnostic method used, qualifications in backgrounds of the expert witnesses and their experience in diagnosing the type of injury incurred." *Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988). When the ALJ's decision is supported by reasonable evidence, we are bound by the ALJ's resolution of conflicting testimony. *Kaibab Indus. v. Indus. Comm'n*, 196 Ariz. 601, 609, ¶ 25 (App. 2000).

¶12    On appeal, Estes challenges the ALJ's finding that he failed to establish any new, additional or previously undiscovered condition causally related to the industrial accident. To that end, Estes first contends that the ALJ erred by improperly weighing the evidence. But we will not reweigh evidence, *Jaramillo v. Indus. Comm'n*, 203 Ariz. 594, 596, ¶ 6 (App. 2002), and reasonable evidence supports the ALJ's findings.

¶13    Hogan testified that Estes's spinal pain, diminished reflexes and decreased sensation throughout his extremities were not caused by arthritis but more likely resulted from a spinal cord impingement, such as often results from a neck injury, including the sort of fall Estes suffered in October 2013. But Hogan did not testify that the symptoms Estes now experiences were new or different than those he was experiencing when his claim was closed. Nor did Hogan opine that Estes's current physical symptoms were caused by the industrial accident. *See Stainless*, 144 Ariz. at 19. Hogan could only say that "a traumatic fall *could* have caused" Estes's neck issues, (emphasis added) admitting that "due to the nature of how, you know, I saw him two years after the injury it's, you know, hard for me to tie it together." *See Harbor Ins. Co. v. Indus. Comm'n*, 25 Ariz. App. 610, 612 (1976) (conflict in evidence not created when expert avoids committing to a particular opinion).

¶14    Kahn testified that after examining Estes in 2014, he had concluded that Estes suffered from arthritis rather than "an acute cervical spine injury, spinal cord injury, or other acute cervical spine pathology." After re-examining Estes in connection with the petition to reopen, Kahn concluded that Estes presented "[e]ssentially, the same" symptoms as before. Kahn further testified that he could not find any "specific organic problem" that corresponded with Estes's subjective reports of pain and that he saw no change in Estes's condition in the form of any new, additional or previously undiscovered condition during the second IME he conducted.

¶15          Given the conflicting testimony concerning the physical symptoms Estes reported, the ALJ reasonably could find Kahn's testimony more probably correct and well-founded than Hogan's, particularly because Kahn was the only testifying medical expert who examined Estes both before and after closure of his original claim. Accordingly, the ALJ was free to find that Estes had not met his burden of showing a change in his medical condition since closure of his claim. *See* A.R.S. § 23-1061(H); *Stainless*, 144 Ariz. at 19.

¶16          Reasonable evidence similarly supports the ALJ's adoption of Walker's testimony over Serrato's concerning whether Estes was suffering from significant new psychological issues. Walker has a doctorate in psychology and had been practicing as a board-certified neuropsychologist for 15 years; Serrato is a physician assistant who has a master's degree in psychology. *See Gutierrez v. Indus. Comm'n*, 226 Ariz. 1, 3, ¶ 6 (App. 2010) (ALJ may consider "the expert witnesses' qualifications, backgrounds, and experience"); *Carousel*, 156 Ariz. at 46 (same).

¶17          After Estes's claim was closed, Serrato diagnosed him with post-traumatic stress disorder and major depressive disorder, both based upon Estes's self-reported symptoms. Walker, on the other hand, testified Estes did not present symptoms to support a diagnosis of post-traumatic stress disorder, adding that Estes exhibited merely an adjustment disorder, which "is considered not to be as severe or as significant as a full blown depressive disorder." Walker based his opinion on an interview and "a number of hours of neurocognitive testing," including a self-validating test of "567 true-false questions" known as the MMPI II. *See Carousel*, 156 Ariz. at 46 (court may consider, *inter alia*, the expert's diagnostic method). Walker opined that Estes was "overperceiving or over reporting symptoms or it may be a noncredible response style."

¶18          Most significantly, Estes failed to offer evidence that his October 2013 fall was the source of his current psychological issues. Cardenas testified that although Estes exhibited symptoms of brain dysfunction, his diagnosis was "not specific to traumatic brain injury." In fact, on cross-examination, Cardenas admitted that the late-effect symptoms Estes exhibited suggested that factors other than the industrial injury were affecting Estes. And Walker testified that Estes had no impairments that were "neuropsychologically related to the industrial injury." Given this evidence, along with Walker's testimony that Estes was over-reporting symptoms, reasonable evidence supports the ALJ's finding that Estes failed to establish that the industrial injury caused his current psychological issues.

**¶19** Estes next argues that his attorney did not effectively represent his interests at the hearing before the ALJ. Specifically, Estes contends his attorney failed to properly cross-examine Kahn and Walker and failed to call other expert witnesses who had treated Estes. We will not address this issue. Generally speaking, "[c]ivil litigants are not entitled to post-judgment relief based on the adverse consequences of their counsel's ineffective assistance." *Rogone v. Correia*, 236 Ariz. 43, 52, ¶ 31 (App. 2014).

**¶20** Estes finally asserts the ALJ had a conflict of interest and demonstrated bias against him because the ALJ issued her Decision Upon Review shortly after the insurance company filed its responding brief and because the ALJ, Estes's attorney and the attorney for the insurance company were in Prescott together shortly after the ALJ issued the Decision Upon Review. In an answering brief, the ICA argues the three went to Prescott to attend a worker's compensation seminar hosted by the Arizona State Bar.

**¶21** A judge's purported bias may violate due process when, "under a realistic appraisal of psychological tendencies and human weakness," the judge has an interest that "poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883-84 (2009) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)); *State v. Granados*, 235 Ariz. 321, 325, ¶ 9 (App. 2014). Under this inquiry, we have no reason to conclude that the ALJ's timely issuance of a decision or attendance at a law-related seminar also attended by litigants' counsel demonstrates bias. At any rate, Estes has presented neither legal authority nor other facts sufficient to support his argument. *See* Ariz. R. Civ. App. P. 13(a)(7)(A) (argument on appeal must contain "citations of legal authorities and appropriate references to the portions of the record on which the appellant relies").

## CONCLUSION

¶22 For the foregoing reasons, we affirm the Decision Upon Review.



AMY M. WOOD • Clerk of the Court
FILED: AA