NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

RAFAEL TEPOX-RAMIREZ, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

AFABE, INC., *Respondent Employer*,

TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, *Respondent Carrier*.

No. 1 CA-IC 19-0020
FILED 1-21-2020

Special Action - Industrial Commission
ICA Claim No. 20153-420120
Carrier Claim No. 127-CB-E1U1983-E
C. Andrew Campbell, Administrative Law Judge

**AFFIRMED**

COUNSEL

Rafael Tepox-Ramirez, Phoenix
*Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Lundmark, Barberich, LaMont & Slavin, P.C., Phoenix
By R. Todd Lundmark, Danielle S. Vukonich
*Counsel for Respondent Employer and Respondent Carrier*

---

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge David B. Gass joined.

---

**W I N T H R O P**, Judge:

¶1   Petitioner Rafael Tepox-Ramirez appeals an award by the Industrial Commission of Arizona ("ICA") that closed his industrial injury claim as of August 2017 with a scheduled permanent partial disability of 1% of the lower right extremity (foot). Petitioner claims that he required ongoing, active medical care for his foot and that he injured his back in addition to his foot in the industrial incident. Petitioner also challenges an order issued by the Administrative Law Judge ("ALJ") that precluded Petitioner from introducing evidence to support his claim of psychological injury stemming from the industrial injury. That order resulted from Petitioner's failure to participate in a scheduled independent medical examination ("IME") with a psychiatrist. Because substantial evidence supports the ALJ's order, as well as his findings and conclusions, we affirm the award.

**FACTS AND PROCEDURAL HISTORY**

¶2   On October 31, 2015, Petitioner was working in an auto shop, assisting with a pickup truck that was being lowered on a lift. The lift was lowered onto Petitioner's right foot. Petitioner could not pull his foot out, and he instinctively tried to lift the car off his foot. He later testified that, as he did so, he "felt a click" in his back. After a minute or so, another employee raised the lift and Petitioner immediately sought medical attention. The injury was treated over the next year but never required surgery. Petitioner developed deep vein thrombosis ("DVT") as a result of the injury and was hospitalized several times due to pulmonary emboli caused by the DVT. He was placed on anticoagulation medication. By August 2017, however, the insurance carrier, Travelers Indemnity Company of Connecticut, determined Petitioner's foot injury was stable and no longer required active or supportive care, including the blood thinner medication. The carrier issued a notice closing the case for

2

temporary benefits and awarded Petitioner a scheduled injury award for a 1% permanent loss of use of his right lower extremity. Petitioner requested a hearing, claiming that he continued to need the anticoagulation medication and that he had injured his lower back in the incident and needed decompression and fusion surgery as a result.

¶3            At the initial hearing on August 2, 2018, Petitioner proceeded without an attorney. He also used an interpreter to state his claims and testify. After his testimony, as the ALJ was clarifying the issues and having the parties list the expert witnesses they were going to call to testify, Petitioner indicated he was having psychiatric or psychological issues that he attributed to the industrial injury and wanted to call a psychiatrist to testify on his behalf. This was the first time that counsel for the employer/carrier was aware of a psychological claim, but he did not object. Instead, counsel expressed his intent to have a psychiatric IME performed. Petitioner did not object, and the ALJ acknowledged the carrier's plan.

¶4            An IME with a psychiatrist, Dr. Joel Parker, was scheduled for August 29, 2018, and notice of that examination was mailed to Petitioner on or about August 6, 2018. On August 20, 2018, Petitioner filed a motion with the ALJ asking to cancel the IME because it was "unfairly request[ed]," not "necessary," and done in "bad faith." On August 24, 2018, the ALJ issued an order denying the motion. Petitioner did not appear for the IME. On September 12, 2018, the carrier moved to dismiss Petitioner's request for a hearing because of Petitioner's failure to attend the IME. Petitioner responded, indicating he did not get actual notice of the ALJ's denial of the motion to cancel until after the scheduled IME because he did not have access to the key for the mailbox where he was living at the time. On October 17, 2018, the ALJ determined it was not appropriate to dismiss Petitioner's request for a hearing simply because of Petitioner's failure to appear at the IME; instead, the ALJ precluded Petitioner from introducing evidence relevant to any psychiatric/psychological claim in the proceedings.

¶5            The hearing proceeded with the ALJ hearing testimony from four experts, one for each side on each of the two remaining issues. Petitioner presented testimony from Dr. Igor Yusupov, a neurosurgeon, who testified that Petitioner needed decompression and fusion surgery for his lower back injury caused by attempting to lift the car off his foot. Petitioner also presented expert testimony from treating pulmonologist, Dr. Gerald Schwartzberg, who testified that continuing anticoagulation medication was medically indicated for Petitioner even though the thrombus had dissipated. Dr. Schwartzberg's opinion was that once a

patient has a DVT, the risk for propagating another thrombus exists, notwithstanding successful treatment of the prior DVT. Dr. Schwartzberg did concede, however, that there is no consensus on this point in the medical community.

¶6 The carrier presented testimony from Dr. Terry McLean, an orthopedic spine surgeon, who testified that insufficient evidence connects Petitioner's back condition with the industrial incident. To reach that opinion, Dr. McLean examined Petitioner and conducted a comprehensive review of the medical records and multiple imaging studies, looking for correlation between Petitioner's subjective complaints and the objective findings of the physical exams and diagnostic studies. In Dr. McLean's opinion, the documented objective findings and the diagnostic studies did not support a back condition causally connected with the industrial injury.[1] The carrier also presented testimony from Dr. A. Lee Ansel, a vascular surgeon, who noted that the external factors that can precipitate DVT— crutches, casting, splinting, or booting—no longer exist for Petitioner. Dr. Ansel opined that Petitioner no longer has any vascular condition or injury and that the risks from being on anticoagulation medication when Petitioner does not have an ongoing vascular condition far outweigh any potential benefits.

¶7 The ALJ resolved the conflict in the medical testimony by finding the opinions of the carrier's experts to be more probably correct and ruled accordingly. The ALJ denied any benefits concerning Petitioner's back condition, which was determined to be non-industrial in origin. The ALJ further found that Petitioner's medical condition was stationary and affirmed the closure of the claim as of August 10, 2017, with a permanent 1% impairment of the right lower extremity. The ALJ's award provided scheduled benefits for that impairment, plus six months' supportive care for the right foot, but excluded any award for indefinite anticoagulation medication.

---

[1] Dr. McLean further noted that a herniated disc injury would result in immediate symptoms; Petitioner testified his back symptoms started some days after the industrial accident. At the hearing, Petitioner also testified to being injured in a car accident in 2017. Following that accident and documented complaints of back pain, an MRI showed Petitioner had posterior disc herniation at L5-S1 of his spine.

**STANDARD OF REVIEW**

**¶8**        On appeal from the ICA, "we defer to the ALJ's determination of disputed facts but review questions of law de novo." *Tapia v. Indus. Comm'n*, 245 Ariz. 258, 260, ¶ 5 (App. 2018); *see also Phelps v. Indus. Comm'n*, 155 Ariz. 501, 506 (1987) (stating we will not overturn the ALJ's findings and conclusions unless they cannot be supported on any reasonable theory of the evidence). The ALJ is the trier of fact, tasked with assessing the evidence and testimony. *Jaramillo v. Indus. Comm'n*, 203 Ariz. 594, 596, ¶ 6 (App. 2002) ("[W]e view factual determinations in the light most favorable to affirming the award. We will not [re]weigh the evidence . . . .") (citations omitted). This assessment includes evaluating the veracity of testimony given or of evidence presented by medical experts. *Walters v. Indus. Comm'n*, 134 Ariz. 597, 599 (App. 1982). It is a claimant's burden to establish before the ALJ that a medical condition is causally related to the industrial accident and that the condition is either not medically stationary, or is stationary but resulted in permanent impairment. *Spears v. Indus. Comm'n*, 20 Ariz. App. 406, 407 (1973).

**DISCUSSION**

**¶9**        On appeal, Petitioner primarily reargues the evidence from the hearing.[2] Because we do not reweigh the evidence, we do not consider these arguments. *See Simpson v. Indus. Comm'n*, 189 Ariz. 340, 342 (App. 1997). Additionally, Petitioner's brief makes several claims that were not raised in the hearing below. We do not address those claims on appeal. *Teller v. Indus. Comm'n*, 179 Ariz. 367, 371 (App. 1994) ("An issue generally cannot be raised for the first time on review."). Petitioner has properly raised in his opening and reply briefs issues concerning (1) whether he has

---

[2]        Petitioner filed an opening brief on July 15, 2019, and a reply brief on September 30, 2019. Both these filings contain attached evidence in the form of medical documentation and other items (including hundreds of pages of medical and other documentation attached to the reply brief). Appellate courts review the records of the tribunal below. *See* Ariz. R. Civ. App. P. ("ARCAP") 11(a) (The record on appeal consists of exhibits, transcripts, and documents from the court below.). To the extent that some of these documents are part of the record below, we have reviewed and considered them. Other records, not part of the record on appeal, have not been reviewed. Moreover, to the extent that the reply brief raises arguments beyond the scope of rebuttal to the answering brief, we do not consider it. *See* ARCAP 13(c) (A reply brief "must be strictly confined to rebuttal of points made in the appellee's answering brief.").

an ongoing need for anticoagulation medication, (2) whether the industrial incident caused his back condition, and (3) whether the ALJ abused his discretion in denying Petitioner an opportunity to present evidence about his psychiatric/psychological injury claim. We address each of these issues in turn.

### I.     Anticoagulation Medication

**¶10**         Petitioner argues that he continues to need anticoagulation medication. However, there were conflicting expert opinions on this issue at the hearing. Dr. Schwartzberg testified that, in his opinion, Petitioner should continue to take the medication as a precautionary measure even though there was no ongoing thrombus, but also acknowledged there is no consensus on this issue in the medical profession. Dr. Ansel testified that the risks of being on such medication indefinitely are too great to continue it after the thrombus has dissipated. Thus, the medical opinions on this issue were in conflict. Where there is a conflict in the evidence or where two different inferences may be drawn from the evidence, the ALJ has the discretion to resolve those conflicts and choose either inference; a reviewing court will not disturb the ALJ's decision unless it is wholly unreasonable. *Waller v. Indus. Comm'n*, 99 Ariz. 15, 18 (1965). Even were we to reach a different conclusion as the trier of fact, as the reviewing court we will not disturb the ALJ's resolution of conflicts in the evidence. *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398-99 (1975). Accordingly, we will not disturb the ALJ's conclusion.

### II.     Lower Back Condition

**¶11**         Petitioner argues that he injured his lower back during the industrial accident. Again, there was conflicting testimony by the experts on this issue. Petitioner presented testimony from Dr. Yusupov, who opined that—based on Petitioner's description of the event, a physical examination, and MRIs taken in 2017—Petitioner injured his back as a result of the industrial event and needed lower back surgery. This testimony was countered by the opinion of Dr. McLean, whose physical examination of Petitioner, along with his review of various diagnostic studies, did not reveal a back injury caused by the industrial accident.

**¶12**         As with the anticoagulation medication issue, the ALJ was presented with a conflict in the medical testimony. We do not find his resolution of that conflict in favor of the carrier to be unreasonable or unsupported by the evidence.

### III. Psychiatric/Psychological Claim

**¶13** Finally, Petitioner argues that evidence concerning his psychiatric/psychological claim should not have been precluded. The ICA hearing rules give an ALJ discretion to impose sanctions on a party who fails to cooperate with the discovery process, including precluding the introduction of evidence by the party or dismissing the party's request for a hearing. Ariz. Admin. Code R20-5-157(A). In this case, the ALJ specifically found that it was "not appropriate" to dismiss Petitioner's request for a hearing and did not do so. Instead, the ALJ precluded Petitioner from calling his proposed psychiatric expert, Dr. Danny McClure, who had provided psychiatric care to Petitioner, and also precluded consideration of Dr. McClure's medical records regarding Petitioner, because Petitioner had not appeared for the scheduled psychiatric IME with Dr. Parker. Accordingly, the hearings previously scheduled to obtain testimony from Drs. McClure and Parker were cancelled. Under these circumstances, we do not find that the ALJ abused his discretion.

**¶14** We note that Petitioner's psychiatric/psychological claim was not formally dismissed. Neither was it specifically denied in the Award for lack of evidence, nor resolved with finality in any fashion. There is no Notice of Claim Status relating to this claim in the record provided to this court. We affirm the ALJ's order precluding Petitioner from presenting evidence relative to this claim in this proceeding, but do not opine on the administrative status or continuing viability, if any, of Petitioner's psychiatric/psychological claim.

## CONCLUSION

**¶15** Petitioner submitted a great deal of evidence at the hearing. Our review of the record shows that the ALJ considered the evidence submitted and made reasonable findings and conclusions based on that evidence. Therefore, we affirm the ALJ's award.



AMY M. WOOD • Clerk of the Court
FILED: AA