NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

DAVID LEE PRUITT, *Plaintiff/Appellant*,

*v.*

STATE OF ARIZONA, et al., *Defendants/Appellees*.

No. 1 CA-CV 24-0418

FILED 02-25-2025

---

Appeal from the Superior Court in Maricopa County
No. CV2021-053278
The Honorable Michael D. Gordon, Judge

**AFFIRMED**

---

COUNSEL

Ahwatukee Legal Office, P.C., Phoenix
By David L. Abney
*Co-Counsel for Plaintiff/Appellant*

Shapiro Law Team, Scottsdale
By Rick Horton, David C. Shapiro
*Co-Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix and Tucson
By Jennifer Rethemeier, Claudia Acosta Collings
*Counsel for Defendant/Appellee State of Arizona*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Angela K. Paton joined.

---

**T H U M M A**, Judge:

¶1 Plaintiff David Lee Pruitt appeals from the grant of summary judgment for defendant State of Arizona (State) and the denial of his motion for new trial. Pruitt challenges the conclusion that the State is his statutory employer, arguing that the only contractual relationship is between the State and Pegasus Research Group d/b/a Televerde (Televerde). Because Pruitt has shown no error, the superior court's rulings are affirmed.

**FACTS AND PROCEDURAL HISTORY**

¶2 Televerde contracts with the Arizona Department of Corrections, Rehabilitation and Reentry (ADCRR) to employ inmates to work at Televerde's call centers. Pruitt, a civilian, was employed by Televerde to supervise inmates working in the call center at the Perryville State Prison Complex. While escorting inmates from one building to another, Pruitt stepped in a pothole, fell and was injured.

¶3 Pruitt filed for and received workers' compensation benefits from Televerde for his injuries. Pruitt then filed this tort case against the State and ADCRR, claiming negligence, premises liability and negligent hiring, entrustment and training.

¶4 After discovery, the State moved for summary judgment asserting Pruitt was a statutory employee under Arizona Revised Statutes (A.R.S.) section 23-902,[1] making the State immune from Pruitt's tort claims. The State also argued that ADCRR is a non-jural entity, which cannot be sued. After full briefing, the superior court granted the State's motion for summary judgment. After Pruitt unsuccessfully challenged that ruling in a motion to reconsider, the court entered a final judgment resolving all of the parties' claims.

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

¶5        Pruitt then filed a motion for new trial under Arizona Rule of Civil Procedure 59. He argued for the first time that, because "the State and [ADCRR] are distinct legal entities," the State could not be Pruitt's statutory employer considering "the only contract of employment regarding Pruitt was the contract between [ADCRR] and Televerde." The State responded that (1) Pruitt waived this new argument by failing to raise it before entry of final judgment and (2) because ADCRR is an arm of the State, the court properly granted the State summary judgment. In reply, Pruitt argued waiver did not apply because "if there was no employment contract between the State and Televerde—and there was not—then [the superior court] cannot have any subject-matter jurisdiction to declare the State was somehow a 'statutory employer' of Televerde (and, hence, of Pruitt)."

¶6        The superior court later denied the motion for new trial, affirming the State "is the party who entered the contract at issue and therefore could [be] (and was) [Pruitt's] statutory employer." Pruitt timely appealed from both the entry of summary judgment and the denial of his motion for a new trial. This court has appellate jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1-2).

## DISCUSSION

I.    **The Superior Court Did Not Err in Granting the State's Motion for Summary Judgment.**

¶7        Pruitt's core argument is the State is not, and could never have been, his statutory employer, meaning entry of summary judgment was in error.

¶8        "The court shall grant summary judgment if the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). Whether the State was Pruitt's statutory employer at the time of his injury is a mixed question of law and fact subject to de novo review. *See Mitchell v. Gamble*, 207 Ariz. 364, 367 ¶ 7 (App. 2004) (citing cases). The court views "the evidence and reasonable inferences in the light most favorable to the party opposing the motion." *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003).

### A.     ADCRR Is an Arm of the State.

**¶9**          Pruitt argues "the State and [ADCRR] are distinct legal entities" and "the contract under which Pruitt was employed was exclusively a contract between [ADCRR] and Televerde," thus making it a legal impossibility for the State to be Pruitt's statutory employer. He also argues he did not waive this issue by failing to raise it until the motion for new trial because, if there was no employment contract between the State and Televerde, then the superior court would have had no subject-matter jurisdiction "to declare that the State was a 'statutory employer' of Televerde (and, hence, of Pruitt)."

**¶10**         Waiver aside, Pruitt's argument is unavailing. By statute, "'State' means this state and any state agency, board, commission, or department." A.R.S. § 12-820(8). Pruitt concedes that the ADCRR is a non-jural entity that cannot be sued. Similarly, again by statute, "[a]ny and all causes of action that may arise out of tort caused by the director, prison officers or employees of the [ADCRR], within the scope of their legal duty, shall run only against the state." A.R.S. § 31-201.01(F).

**¶11**         Given these statutory prohibitions, Pruitt points to the language of the contract signed by ADCRR and Televerde, arguing it is exclusively between those two entities (and does not include the State). Not so. The first page of the contract expressly uses "State of Arizona" in the heading, adding that "[r]eferences to State shall mean the State of Arizona." The contract, in turn, specifies various rights and obligations of the State and Televerde, including cancellation provisions, audit of records, e-verification of employee records and indemnification and workers compensation. Pruitt himself admits the employer in this instance was ADCRR, which is an arm of the State. Because ADCRR is an arm of the State, the court did not err in concluding that, for purposes of Pruitt's tort claims asserted here, the State and ADCRR are the same entity.

### B.     Pruitt Has Not Shown the Superior Court Erred in Concluding ADCRR Is Pruitt's Statutory Employer.

**¶12**         Pruitt also argues the State was never his statutory employer and therefore had no right to use the statutory employer doctrine as an immunity defense. An entity seeking to show it is a statutory employer must show two things: (1) retention of supervision or control over the work procured to be done by a contractor and (2) the work entrusted to the subcontractor must be a "part or process in the trade or business" of the

4

employer against whom the third-party tort action is asserted. *Young v. Env't Air Prods., Inc.*, 136 Ariz. 158, 161 (1983) (citing authority).

### 1. ADCRR Retained Supervision or Control Over the Work Procured by Televerde.

**¶13** To determine whether an employer is a statutory employer of an independent contractor's employee, the court considers the control exercised by the employer over the contractor, not the employee. *Young*, 136 Ariz. at 163. Pruitt claims that "reasonable jurors could have concluded and inferred from the facts that [ADCRR] had no relevant supervision or control over the for-profit call center trade or business that Televerde was contracted to provide." But an entity hiring a contractor exercises supervision or control over the contractor if the entity retains "the right to control or supervise the methods of obtaining a specific result." *Hunt Bldg. Corp. v. Indus. Comm'n*, 148 Ariz. 102, 105 (1986) (citation omitted).

**¶14** In making this determination, the court considers the totality of the circumstances, including the following factors:

> [T]he duration of the employment; the method of payment; who furnishes necessary equipment; the right to hire and fire; who bears responsibility for work[ers'] compensation insurance; the extent to which the employer may exercise control over the details of the work[] and whether the work was performed in the usual and regular course of the employer's business.

*Home Ins. Co. v. Indus. Comm'n*, 123 Ariz. 348, 350 (1979) (citations omitted).

**¶15** *Wagner v. State*, 242 Ariz. 95 (App. 2017) applied these factors in a similar context, affirming summary judgment for the State. In *Wagner*, a clinical social worker, who worked for a contractor that provided healthcare services at state-owned prisons under a contract with ADCRR, slipped, fell and injured herself at a prison. *Id*. at 96 ¶ 2. The 3-year contract between the contractor and ADCRR required ADCRR to maintain facilities and fixtures for health services. *Id*. at 97 ¶ 10. Additionally, ADCRR retained the power to approve the contractor's hires, the contractor was required to have workers' compensation insurance and ADCRR had the power to monitor "any correspondence, records, reports, or other written and/or electronic materials" dealing with the contract. *Id*. at 97–98 ¶ 10. Looking to the substance of the contract and recognizing that the court

should strictly construe the statute "when loss of the worker's common law rights is the object for which the statute is invoked," *Wagner* affirmed the grant of summary judgment to the State. *Id.* at 96 ¶ 1, 96 ¶ 7 (citing *Young*, 136 Ariz. at 163). The court held the employee was a statutory employee of the State because the State retained the right to control or supervise the contractor's work and because the services constituted a part or process in the usual and regular course of the State's business. *Id.* at 96 ¶ 1.

¶16            Here, ADCRR and Televerde entered into a contract where Televerde agreed to pay ADCRR for the right to operate a call center in the prison, and Televerde thereafter provided work opportunities to ADCRR inmates to assist in their rehabilitation. ADCRR screened and approved the hires after performing a background check before allowing them access to the call center or to supervise inmates. Televerde's employees were then subject to annual background checks to maintain access to the prison facilities. The contract with ADCRR required Televerde to provide workers' compensation insurance, and Televerde did so. Indeed, Pruitt received workers' compensation benefits before filing this suit. ADCRR provided the land, the building and the infrastructure for the call center, while Televerde provided the necessary business equipment. Televerde provided supervisors "knowledgeable in the types of work tasks to be accomplished and the correct way to complete each task," and who "supervise[d] inmate work production." The contract limited the type of equipment that could be used in the call center, and ADCRR required Televerde's staff to monitor and record all phone calls made by inmates to ensure the calls were pertinent to the inmates' work. The contract also required Televerde to comply with ADCRR's "procedures in recording inmate work hours and rendering all payments." These contract provisions show the same type of control over the work by ADCRR as in *Wagner*, if not more.

¶17            Pruitt repeatedly declares that "[t]here are genuine disputes on the 'statutory employee' totality-of-the-circumstances supervision-and-control factors" that can only be resolved by a jury. But the State does not dispute the facts Pruitt asserted, demonstrating instead that none of them are material. Moreover, in arguing summary judgment was improper, Pruitt relies on *Livingston v. Citizen's Utils., Inc.*, 107 Ariz. 62 (1971), including the subsequent appeal in that case, *Citizen's Utils., Inc. v. Livingston*, 21 Ariz. App. 48 (1973). *Livingston*, however, is distinguishable. In *Livingston*, unlike this case, there was no contract governing the relationship between the employer and the claimed statutory employer, with the court stating:

> Where there is [] no express agreement as to the right of the employer to control the manner of doing the work by an alleged employee, the existence or non-existence of this right must be determined by reasonable inferences drawn from the surrounding circumstances and this is normally a question of fact for the jury.

107 Ariz. at 65.[2] But here, the relationship between ADCRR and Televerde is governed by an express written contract. The control exercised by the State over Televerde, which is the dispositive consideration, *see Young*, 136 Ariz. at 163, is defined in that written contract. Because "[t]he construction of a contract is a question of law when the terms are plain and unambiguous," *Smith v. Melson, Inc.*, 135 Ariz. 119, 121 (1983) (citations omitted), and Pruitt concedes the terms of the contract between ADCRR and Televerde are plain and unambiguous, the court did not err in concluding that there is no genuine issue as to any material fact and that the State is entitled to judgment as a matter of law, *see Avila v. Northrup King Co.*, 179 Ariz. 497, 505 (App. 1994) (citing cases).

¶18　　　　Pruitt also claims that "[s]tatutory immunity cannot apply in favor of the State where it is not subject to any liability for paying any workers' compensation benefits" because Televerde was the party that provided the workers' compensation insurance. But this expense was presumably accounted for as part of the negotiated contract between Televerde and ADCRR, and in any event, Pruitt's argument is contrary to *Wagner*, where the court found the State was a statutory employer and immune from suit even where the contractor/third party provided the workers' compensation insurance. 242 Ariz. at 98 ¶¶ 11-13. Considering the totality of the circumstances and the similarities with *Wagner*, the superior court did not err in concluding the State retained supervision or control over the work procured to be done by Televerde.

---

[2] Given this distinction, Pruitt's reliance on "the decision-making process" in the *Livingston* trial is not relevant here. Moreover, ultimately, *Livingston* vacated a $113,000 verdict for plaintiff, finding her claim failed as a matter of law on grounds not at issue here. *See* 21 Ariz. App. at 53-54.

### 2. The Work Entrusted to Televerde Was a "Part or Process in the Trade or Business" of ADCRR.

¶19 Pruit argues reasonable jurors could have concluded "Televerde's call-center trade or business was not—in any realistic or meaningful way—'part or process' in [ADCRR]'s unique and distinctly different prison-correctional trade or business." He argues "no reasonable juror would ever infer that the 'particular work activity' of operating a call center is in any way regular, ordinary, or routine in [ADCRR's] operations or is something that [ADCRR's] employees would do 'regularly.'" Pruitt also attempts to distinguish *Wagner* by arguing that, "unlike the provision of healthcare services to inmates in *Wagner*, it is not a part or process of [ADCRR's] business to operate a for-profit call-center operation."

¶20 Pruitt's argument is unavailing. Like in *Wagner*, ADCRR has a statutory duty to "[m]aintain and administer all institutions and programs within the department, including prisons . . . and such other facilities and programs as may be required and established for the custody, control, correction, treatment and rehabilitation of all adult offenders who are committed to the department." A.R.S. § 41-1604(A)(2). By statute, the ADCRR director may lease prison property in connection with the Correctional Industries Program "to a private corporation for the purpose of establishing and operating . . . [a] commercial enterprise deemed by the director to provide employment opportunities for inmates in meaningful jobs for wages." A.R.S. § 41-1623(D). Thus, the work entrusted to Televerde was a "part or process in the trade or business" undertaken by ADCRR to provide rehabilitation services.

### 3. Pre-*Wagner* Case Law, as Well as Cases Applying *Wagner*, Support the Grant of Summary Judgment Here.

¶21 Despite Pruitt's effort to portray *Wagner* as an outlier, case law before and after *Wagner* supports the grant of summary judgment.

¶22 *Karandbir Sandhu v. State*, decided two weeks before *Wagner*, involved an employee of the same contractor as in *Wagner* that provided healthcare services to ADCRR. *See* No. 1 CA-CV 16-0095, 2017 WL 1278982, at *1 ¶ 2 (Ariz. App. Apr. 6, 2017) (mem. decision). The employee filed a negligence claim against the State after an inmate assaulted him. *Id.* at *1 ¶¶ 2-3. The court affirmed the grant of summary judgment, concluding that "through the parties' detailed contract," ADCRR "retained control over [the contractor's] provision of health and dental services inside [ADCRR]

8

facilities." *Id*. at *2 ¶ 9. *Karandbir Sandhu* supports the superior court's grant of summary judgment here.

**¶23** More recently, *Fox v. Arizona* involved an employee of a contractor providing healthcare services to ADCRR who filed tort claims against the State after being sexually assaulted while working at a prison. CV-21-01089-PHX-MTL, 2023 WL 4315221, at *1 (D. Ariz. July 3, 2023). The State moved to dismiss the case under the workers' compensation statute. *Id*. Applying *Wagner*, the United States District Court concluded "the contract between [the contractor] and [ADCRR] controls their relationship" and weighed the *Home Ins.* factors as detailed in the contract to conclude the employee was a statutory employee of ADCRR. *Id*. at *4, *8. *Fox*, again in the prison context, applied *Wagner* in a way supporting the superior court's grant of summary judgment here.

**¶24** Because both *Young* inquiries are satisfied, the superior court did not err in concluding that Pruitt was a statutory employee of the State at the time of his injury. Accordingly, the superior court properly entered summary judgment in favor of the State.

## II. The Superior Court Properly Denied Pruitt's Motion for New Trial.

**¶25** Pruit argues the superior court erred in denying his Rule 59 motion for new trial. A superior court has considerable discretion in deciding a motion for new trial. *See, e.g.*, *City of Glendale v. Bradshaw*, 114 Ariz. 236, 238 (1977). This court will not reverse a ruling on a motion for new trial "absent a clear abuse of discretion." *Delbridge v. Salt River Project Agric. Improvement & Power Dist.*, 182 Ariz. 46, 53 (App. 1994) (citing cases).

**¶26** Pruit claims the superior court erred in denying his motion for new trial because the judgment and orders related to it were based on the conclusion that the State was Pruitt's statutory employer, which he argues was an abuse of discretion depriving Pruitt of a fair trial, Ariz. R. Civ. P. 59(a)(1)(A), resulted from errors of law, Ariz. R. Civ. P. 59(a)(1)(F), lacked evidentiary support, Ariz. R. Civ. P. 59(a)(1)(H), and were contrary to law, Ariz. R. Civ. P. 59(a)(1)(H). As noted above, however, the superior court properly concluded the State was Pruitt's statutory employer. Similarly, the superior court's finding did not result from an error of law, was not contrary to the law and did not lack evidentiary support. For these reasons, Pruitt has shown no error in the superior court denying his motion for new trial.

## ATTORNEYS' FEES

**¶27**　　Pruitt requests attorneys' fees and costs incurred on appeal pursuant to ARCAP 21(a) and A.R.S. §§ 12- 341 and 342. Because Pruitt is not the successful party, his requests are denied.

## CONCLUSION

**¶28**　　The grant of summary judgment and the denial of Pruitt's motion for new trial are affirmed.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:　　　JR